UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATHLYN WILK,

     Plaintiff,        Case No. 2:16-cv-14308
                 District Judge Nancy G. Edmunds
v.                Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

## RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 17) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 19)

**I.  RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 17), **GRANT** Defendant's motion for summary judgment (DE 19),

and **AFFIRM** the Commissioner's decision.

**II.  REPORT**

  Plaintiff, Cathlyn Wilk, brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for social security disability insurance

(DI) benefits. This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment (DE

17), the Commissioner's cross motion for summary judgment (DE 19), Plaintiff's reply (DE 20), the Commissioner's response to Plaintiff's reply (DE 21), and the administrative record (DE 13).

### A.   Background

Plaintiff filed her application for DI benefits on April 25, 2012, alleging that she has been disabled since February 1, 2012.  (R. at 188-91.)  Plaintiff's application was denied, and she sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 123-28.)  ALJ Ethel Revels held a hearing on March 4, 2014, at which Plaintiff was represented by counsel.  (R. at 34-78.)  At that time, Plaintiff amended her onset date to July 21, 2012, her 55th birthday.  (R. at 217.)  The ALJ considered all of the evidence and determined that Plaintiff was not disabled within the meaning of the Social Security Act through her date last insured, December 31, 2012.  (R. at 108-119.)  On January 29, 2016, the Appeals Council notified Plaintiff that it had granted her request for review, reopening the ALJ's decision because there was an error of law, namely, that a review of Plaintiff's earning record indicates that she was insured for DI benefits through June 30, 2013, and that the ALJ's decision did not consider whether Plaintiff was disabled for the period of January 1, 2013 through June 30, 2013.  (R. at 175-78.)  After considering the record for the entire period—from February 1, 2012 through June 30, 2013—the Appeals Council informed Plaintiff that it intended to adopt the

ALJ's findings at Steps 1 through 4 of the sequential evaluation process, finding

Plaintiff not disabled because she could still perform her past work as a sales clerk

and receptionist.  (R. at 176.)  On March 18, 2016, the Appeals Council issued an

unfavorable decision, adopting the ALJ's findings from Steps 1 through 4 and

extending Plaintiff's date last insured until June 30, 2013.  (R. at 30-31.)

On October 7, 2016, the Appeals Council set aside the March 2016 decision

to consider new information from Plaintiff.  (R. at 2-8.)  After consideration of that

evidence, the Appeals Council again determined that Plaintiff was not disabled,

adopting the ALJ's findings and extending Plaintiff's date last insured until June

30, 2013.  (R. at 6.)  That decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on December 9, 2016. (DE 1.)

## B.    Plaintiff's Medical History

Plaintiff's combined medical records span the period from January 21, 2009

through March 2, 2016, and include complaints primarily of lower back pain, as

well as complaints of neck, foot, knee and hip pain. (R. at 257-468.)  The 211

pages of medical records are mostly comprised of hospital and treatment records

and diagnostic testing, but also include July 11, 2012 and August 24, 2012

consultative examinations (CEs) by Harold Nims, D.O. and Hugh Bray, Ph.D.,

respectively (R. at 280-89, 290-95) and a November 28, 2012 medical

evaluation/case analysis by Charles K. Lee, M.D. (R. at 296-97).  These medical

records will be discussed as necessary below.

### C.     Hearing Testimony

Plaintiff testified at the March 4, 2014 hearing before ALJ Revels, as did

vocational expert Luann Castellana.  (*See* R. at 37-77.)  This testimony will be

discussed as necessary below.

### D.     The Administrative Decision

On August 28, 2014, ALJ Revels issued an "unfavorable" decision.[1]   At

**Step 1** of the sequential evaluation process,[2] the ALJ found that Plaintiff has not

---

[1] Although the Appeals Council issued the final decision in this case on October 7,
2016 (R. at 2-8), the Council adopted the ALJ's findings at Steps 1-4 of the
sequential evaluation process from the August 28, 2014 decision, and extended
those findings through the date last insured of June 30, 2013.  (R. at 2-8, 105-22.)
Accordingly, I will refer to the relevant pages of the ALJ's and the Appeals
Council's decisions.

[2] Social Security Regulations require ALJs to resolve a disability claim through a
five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4),
416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's
review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully
considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet
or equal the criteria of an impairment set forth in the Commissioner's
Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the
claimant perform his or her past relevant work?

engaged in substantial gainful activity since February 1, 2012, the alleged onset date, through June 30, 2013, the date last insured.  (R. at 6, 110.)  At **Step 2**, the ALJ found that Plaintiff has a severe impairment of a back disorder.  (R. at 6, 110-12.)  At **Step 3**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 6, 113.)  Prior to **Step 4** of the sequential process, the ALJ determined that Plaintiff has the residual functional capacity ("RFC")[3] to:

> perform medium work … except that she could not work in temperature extremes or in wet or humid areas.  She could never climb ladders, ropes, or scaffolds; could occasionally kneel and crouch; never crawl; and could not constantly stoop.  She could not constantly use her hands and could do no frequent (only occasional) overhead reaching.  She could not work at hazardous heights or around dangerous machinery.

(R. at 6, 113-16.)  At **Step 4**, the ALJ concluded that Plaintiff was capable of performing past relevant work as a sales clerk and receptionist, and that she therefore was not under a disability, as defined by the Social Security Act, through

---

5.      Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

the date last insured.  (R. at 6, 116-17.)  The ALJ also made an alternative Step 5

finding that other jobs existed in significant numbers in the national economy that

Plaintiff could perform.  (R. at 117-18.)  However, the Appeals Council did not

expressly address or adopt that alternative finding.  (*See* R. at 2-8.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

6

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## F.     Analysis

Plaintiff claims that the physical and mental limitations in the ALJ's RFC are not supported by substantial evidence because: **(1)** the evidence does not show that she is capable of lifting and carrying weight at the medium exertional level; and **(2)** the ALJ erred by not discussing a portion of the psychological consultative examiner's opinion that contained a "mild to moderate" impairment in Plaintiff's ability to withstand stress and pressure at work.  (DE 17 at 15-17.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision.  (DE 22 at 3, 7-19.)  I will address each argument in turn.

### 1.     The ALJ's RFC Finding That Plaintiff Could Lift and Carry at the Medium Exertional Level

Plaintiff argues that there is "no justification" for the ALJ's conclusion that she can perform work at the medium exertional level.  (DE 17 at 15-16.)  She contends that the ALJ improperly dismissed the opinion by the consultative examiner, Dr. Nims, that she could lift no more than 15 pounds.  (*Id.* citing R. at 115.)  She further asserts that a May 2011 lumbar MRI established objective evidence of arthritis in her back "that caused some, albeit minimal, effacement and encroachment at L3-4[,]" and that her treatment for "degenerative disc disease" involved multiple prescription medications.  (DE 17 at 15-16, citing R. at 115, 270-71.)  Finally, Plaintiff contends that given her "age, stature, arthritic back and

8

medication regimen, the record, as a whole[,] is much less supportive of a 50

pound limit than a 15 pound lifting restriction."  (DE 17 at 16.)

Plaintiff's RFC is "the most [she] can still do despite the physical and mental

limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F.

App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).

The determination of Plaintiff's RFC is an issue reserved to the Commissioner and

must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e).

"'ALJs must not succumb to the temptation to play doctor and make their own

independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x

181, 194 (6th Cir. 2009) (citation omitted).  Pursuant to Social Security Rule 96-

8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).    In
> assessing RFC, the adjudicator must discuss the individual's ability to
> perform sustained work activities in an ordinary work setting on a
> regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or
> an equivalent work schedule), and describe the maximum amount of
> each work-related activity the individual can perform based on the
> evidence available in the case record. The adjudicator must also
> explain how any material inconsistencies or ambiguities in the
> evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

not require the ALJ to discuss those capacities for which no limitation is alleged."

9

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).  Instead, the

ALJ '"need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-related

activities, and explain the resolution of any inconsistencies in the record."'  *Id.*

(citations omitted).

> ### a.   The ALJ's RFC Determination for a Reduced Range of Medium Exertional Level Work

The ALJ here thoroughly reviewed and considered Plaintiff's testimony, her

daily activities, the objective medical evidence, her treatment history, and the

opinion evidence, and found that, despite Plaintiff's back disorder, she still was

capable of performing a reduced range of medium exertional level work.  (R. at

113-16.)  "Medium" work "involves lifting no more than 50 pounds at a time with

frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §

404.1567(c).  ALJ Revels observed that Plaintiff received limited treatment during

the relevant time period.  (R. at 114-15.)  Prior to the alleged onset date, Plaintiff

sought emergency room treatment for complaints of low back pain, and while she

had spinal tenderness, she had no signs of spinal cord compression, cauda equina

syndrome, or infection, and her pain improved prior to discharge with morphine

and Zofran.  (R. at 115, 256-66.)  A May 2011 MRI scan of Plaintiff's lumbar

spine revealed only mild to moderate abnormalities at the L2-3, L3-4, and L4-5

levels with no nerve root impingement and no evidence of large herniation or

spinal stenosis.  (R. at 115, 270-71.)  In addition, Plaintiff's treatment notes with

Dr. Vinod Mohey before and during the relevant time period were generally

unremarkable, with normal musculoskeletal examinations from September 2011

through August 2012 and with Plaintiff reporting at her August 2012 examination

that she "feels OK."  (R. at 115, 298-300.)  The ALJ further noted that Plaintiff

only sought conservative treatment consisting of refills of the same medication,

and that there is no evidence that she sought treatment with a specialist, sought

emergency room treatment during the relevant time period, or that she underwent

any injections during the relevant time period.  (R. at 115.)  Plaintiff's overall

treatment history and the objective medical evidence provide substantial evidence

supporting the ALJ's RFC determination.

### i.    Dr. Nims's opinion

Plaintiff complains that the ALJ "dismissed" the opinion of the consulting

examiner, Dr. Nims, which limited Plaintiff to lifting no more than 15 pounds.

(DE 17 at 15.)    However, ALJ Revels did not "dismiss" Dr. Nims's opinion, but

rather properly considered it and gave his limitations "little weight, as they are

inconsistent with the claimant's generally normal exam" and because "the records

as a whole do not support a 15-pound lifting restriction."  (R. at 115.)  Indeed, as

the ALJ noted, Plaintiff's exam by Dr. Nims in July 2012 was generally

unremarkable with no tenderness or spasm in the cervical and lumbar spine and no

tenderness, redness, warmth or swelling in Plaintiff's upper or lower extremities, hands or hips.  (R. at 283.)  Plaintiff's gait was normal, she did not require the use of a handheld assistive device, her grip strength was 5/5 bilaterally, her straight leg raising test was normal and she was able to stand on one leg at a time without difficulty, as well as walk on heels and toes and squat.  (R. at 282-84.)  Plaintiff was able to stand for 20 minutes and her ranges of motion were all within normal limits.  (R. at 285-88.)  The ALJ's finding that Dr. Nims's limitations, specifically including the 15 pound lifting restriction, were not supported by Plaintiff's "generally normal exam" is supported by substantial evidence.

### ii.    The records as a whole

The ALJ further found that "the records as a whole do not support a 15-pound lifting restriction."  (R. at 115.)  As discussed above, the ALJ considered Plaintiff's limited and conservative treatment, medical records showing only mild to moderate abnormalities, Plaintiff's testimony and her "wide range" of daily activities.  (R. at 113-15.)  Plaintiff points to the May 2011 MRI showing "minimal[] effacement and encroachment at L3-4" as evidence that the RFC is not proper.  (DE 17 at 15.)  However, the ALJ expressly considered that finding, and the fact that the May 2011 MRI showed "mild to moderate arthropathic changes" within Plaintiff's lumbar spine (R. at 115), does not establish that Plaintiff experienced any functional limitations from those conditions, and certainly not any

12

limitations in excess of those found by the ALJ.  It is well established that the mere diagnosis of a condition or impairment says nothing about the severity of the condition or the existence of a functional limitation.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Plaintiff also argues that the ALJ's RFC is not supported because of her "use of multiple … medications" prescribed by her doctor, Vinod Mohey, M.D.  (DE 17 at 15-16.)  However, the ALJ properly considered "[t]he type, dosage, effectiveness, and side effects of any medication [Plaintiff] has taken to alleviate [her] pain or other symptoms," *see* 20 C.F.R.. § 404.1529(c)(3)(iv), and noted that Plaintiff's treatment records show her dosages remained steady and that her "conservative treatment, consisting of refills of the same pain medications, suggest that it was effective."  (R. at 115-16 (noting as well that "[t]here is no evidence that she was seeking other forms of treatment").)  *See Webb v. Comm'r of Soc. Sec.*, No. 14-12332, 2015 WL 4756576 (E.D. Mich. Apr. 24, 2015) (the ALJ properly considered that the claimant's "treatment remained conservative during this time with no noticeable changes in either the type or dosage of her medications"), *report and recommendation adopted as modified*, 2015 WL 4756589 (E.D. Mich. Aug. 11, 2015).

### iii.  Consideration of age, height and weight

Plaintiff's contention that the ALJ should have considered her age, height and weight when deciding on the lifting restriction also fails.  Social Security

13

Ruling (SSR) 96-8p appears to specifically exclude such physical characteristics, limiting the ALJ to considering "only limitations and restrictions attributable to medically determinable impairments," and saying specifically that "factors such as *age* or *height*, or whether the individual has ever engaged in certain activities in her past relevant work (e.g., lifting heavy weights)" are not to be considered in assessing RFC.  Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (emphasis added); *see also Hudson-Kane v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 908, 915 (M.D. Tenn. 2017) ("Plaintiff's contention that her age, weight, and height preclude a finding that she is capable of medium work is not only unfounded, but also … contrary to Social Security Ruling ("SSR") 96-8p[.]").  Accordingly, the ALJ could not have included these factors in her RFC determination.

### iv.     Support for work level and ability to lift

However, I note that the ALJ does not identify any opinion evidence supporting her finding that Plaintiff has the ability to perform medium-level work, in particular addressing the ability to lift 50 pounds "with frequent lifting or carrying of objects weighing up to 25 pounds."  *See* 20 C.F.R. § 404.1567(c).  I recognize that, when evaluating the claimant's RFC, the ALJ is not required to base his or her RFC findings entirely on a physician's opinion.  *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015); *see also Rudd v.*

14

*Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication off the Commissioner's statutory responsibility to determine whether an individual is disabled.'") (citation omitted). But, when determining a claimant's RFC, "[i]t is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians," and an ALJ may not interpret raw medical data in functional terms. *Brown v. Comm'r of Soc. Sec.*, No. 1:14-CV-236, 2015 WL 1431521, at *7 (W.D. Mich. Mar. 27, 2015) (citing *Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006)); *see Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009). However, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Nevertheless, the ALJ remains obligated to make a logical bridge between the evidence relied on and the conclusion reached. *See Gross v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 824, 829-30 (E.D. Mich. 2017.).

This is not a case where the ALJ formulated her RFC without the benefit of any opinion evidence. Here, the ALJ based her RFC finding in part on the

opinions of the consulting examiner and the State agency medical consultant,

although finding that Plaintiff was capable of medium level exertional work rather

than light work or lifting no more than 15 pounds, as opined by those doctors.  (R.

at 115-16 (giving little weight to Dr. Nims's opinion and some weight to Dr. Lee's

opinion).)   Plaintiff, however, "has the ultimate burden to establish an entitlement

to benefits by proving the existence of a disability," *see Moon*, 923 F.2d at 1181,

and she has produced no treating source opinion that she is limited to a greater

extent than found by the ALJ, and an ALJ "is not bound by conclusory statements

of doctors, particularly where they are unsupported by detailed objective criteria

and documentation."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal

citation omitted).  However, the ALJ's determination that Plaintiff is functionally

capable of performing medium work appears to be based on her own medical

conclusion that the record evidence justifies her performing such exertional level

work, without any medical source opinion supporting that determination.

Nevertheless, for the reasons set forth below, this matter does not need to be

remanded to the ALJ for further consideration of Plaintiff's RFC.

### b.    Harmless Error

Even if the ALJ had adopted Dr. Nims's 15-pound lifting limitation, as

Plaintiff seems to propose, her decision would not be different.   The ALJ

concluded at Step 4 of the sequential evaluation that Plaintiff could perform her

16

past relevant work, which included, among others, work as a receptionist, which is a sedentary job.  (R. at 116-17; *see also* R. at 70-71.)  Sedentary work "involves lifting no more than 10 pounds at a time."  20 C.F.R. § 04.1567(a).  Therefore, even if the ALJ had limited Plaintiff to lifting no more than 15 pounds, as Plaintiff contends, she still would not be disabled because she could still perform her past work as a receptionist.  "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)); *see also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (noting that in such instances courts are not required to "convert judicial review of agency action into a ping-pong game") (citation omitted).  Because the ALJ's ultimate conclusion at Step 4 would not change, Plaintiff's claim of error is denied.  *See Laporte v. Comm'r of Soc. Sec.*, No. 1:15-cv-456, 2016 WL 5349072, at *3 (W.D. Mich. Sept. 26, 2016) ("Even if the ALJ had included the overhead lifting restriction in the RFC determination, the result would not change because the vocational evidence (i.e., the VE's testimony) established that this restriction would not preclude plaintiff from performing her past relevant work."); *McKenzie v. Comm'r of Soc. Sec.*, No. 14-14856, 2015 WL 9594255, at *4 (E.D. Mich. Nov. 30, 2015)

(the ALJ's improper exertional limitation in the RFC determination was deemed harmless error because even if the ALJ were required to limit the claimant to a lower (medium) exertional level, the VE would testify that a hypothetical claimant could perform his past work), *report and recommendation adopted*, 2016 WL 454463 (E.D. Mich. Feb. 5, 2016).   Plaintiff bears the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing her past relevant work.   *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).   Plaintiff has not satisfied her burden here, and the ALJ's Step 4 decision is supported by substantial evidence.

### 2.     Potential Mental Limitations

Plaintiff also argues that the ALJ failed to consider the opinion of the consultative psychologist, Hugh Bray, Ph.D., that Plaintiff's "mental ability to withstand stress and pressure associated with day to day work activities is mildly to moderately impaired."  (DE 17 at 16, citing R. at 293.)  She contends that the ALJ instead "focused solely on the doctor's findings of mild impairment in the other areas of work related mental activities, thereby leading to the conclusion [Plaintiff's] depression had only a minimal impact on her ability to work.")  (DE. 17 at 16-17, citing R. at 112.)  The Commissioner responds that there is no merit to Plaintiff's challenge.

As the Commissioner explains, the ALJ considered Plaintiff's claimed mental limitations, but concluded that her depression was not severe because it caused no more than a minimal effect on her ability to perform work activities. (R. at 111.) In making that finding, the ALJ gave great weight to the State agency psychological consultant, Rom Kriauciunas, Ph.D.'s Psychiatric Review Technique Form (PRTF), which indicates that Plaintiff has mild limitations in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence or pace, with no episodes of decompensation. (R. at 112, citing R. at 85.) The ALJ noted that these findings are consistent with the overall record evidence that shows a history of mental health counseling in the remote past, as well as treatment with Effexor in the past, but no mental health treatment during the relevant time period. (R. at 112.)

The ALJ also expressly considered Dr. Bray's report and opinion based on his August 2012 consultative examination. (R. at 112, citing R. at 290-95.) The ALJ noted that Plaintiff's mental status exam was unremarkable, and that she reported an excellent to good relationship with friends, that she got along well with coworkers and employers, that she read constantly, and that she was able to do a wide variety of activities such as housekeeping, laundry, paying bills, cooking

simple meals, shopping, cashing checks, and driving. (*Id.*)[4] Like Dr. Kriauciunas,

Dr. Bray opined that Plaintiff had only mild impairment in her activities of daily

living, social functioning, and concentration, persistence and pace. (*Id.*)

The ALJ considered this opinion evidence at Step 2 of the sequential

evaluation in determining that Plaintiff's depression had only a minimal impact on

her ability to work prior to her date last insured, and thus was not severe. (R. at

112.) The ALJ also expressly considered this evidence in making her RFC

determination. (*See* R. at 113 ("The claimant alleges disability due to …

depression" and "difficulty concentrating and focusing"); R. at 114 ("the claimant

reported having some depression from being unable to function day-to-day or to

perform her job, but she has not had any recent treatment for this condition") and

("While the claimant testified that she tries to read every day, but has trouble with

focus and concentration due to pain and that she is forgetful, the undersigned does

not find these allegations fully credible") and ("She also got along well with

friends, coworkers, and employers").) Nothing more is required. It is well-

established hat an ALJ is not required to comment on every finding in a medical

opinion. *See Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir.

---

[4] Plaintiff's function report states that she reads "a lot/several books per week[,]" and does puzzles and crossword puzzles. She does not need to be reminded to go places, understands instructions "reasonably well[,]" can follow a recipe and reports no problems with memory, completing tasks or understanding. (R. at 238, 241-42.)

2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion so long they consider the evidence as a whole and reach a reasoned conclusion."). Rather, the ALJ must say enough "to allow the appellate court to trace the path of [her] reasoning." *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). The ALJ properly considered Dr. Bray's opinion, in conjunction with Dr. Kriauciunas's PRTF with similar findings, and the record evidence, and found the evidence as a whole demonstrates that Plaintiff's depression had only a minimal impact on her ability to perform work activities. This decision is supported by substantial evidence and I am able to trace the path of her reasoning.

### G.    Conclusion

In sum, the ALJ's opinion is supported by substantial evidence and any legal error is harmless. Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 17), **GRANT** Defendant's motion for summary judgment (DE 19), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:        February 8, 2018            s/Anthony P. Patti
                                          Anthony P. Patti
                                          UNITED STATES MAGISTRATE JUDGE

22

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 8, 2018, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti